# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **ANTON COOLEY, SR.** | **CIVIL ACTION NO. 5:17-cv-00329** |
| **VS.** | **SECTION P** |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **JAMES LEBLANC, ET AL** | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Anton Cooley, Sr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 9, 2017. Plaintiff, awaiting trial on a charge of second degree murder, is incarcerated at the Caddo Correctional Center (CCC), where he is a practitioner of the Rastafari faith. He instituted this suit for prospective injunctive relief against the Louisiana Department of Corrections ("DOC") and Secretary James M. LeBlanc, challenging the DOC's grooming policies, specifically the policies governing haircuts. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the plaintiff's request for prospective injunctive relief be **DENIED** and that the instant complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

## *Statement of the Case*

Plaintiff is currently incarcerated at the CCC, awaiting trial on charges of second degree murder. [Rec. Dc. 5, p. 3] He is a practicing Rastafarian. Relying on Leviticus 21:5 which states, "They shall not make baldness upon their head neither shall they shave the corner of their beard, nor make any cuttings in the flesh," he argues that any regulation that requires him to cut his hair

interferes with his religious practice. *Id*. He asks this Court to issue an order enjoining the Louisiana Department of Corrections from cutting his dread locks and give him a copy so that if he has to "travel through the DOC systems of prison camps in Louisiana," no one can force him to "take baldness to his head by cutting of 'locks' nor the cutting or trimming in beard." *Id.*

### *Law and Analysis*

### *1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### *2. Practice of Religion*

Plaintiff's claims are premised on his First Amendment right to practice his religion. Inmates

2

clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff challenges the DOC grooming regulations which require that all male inmates received into the DOC's physical custody receive — forcibly, if necessary — a closely-cropped

3

haircut with clippers, commonly known as a "buzz cut." *See Ware v. La. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 124980 (W.D. La. Sept. 12, 2016).

Under the first Turner variable, "we must determine whether the governmental objective underlying the regulations at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 109 S. Ct. 1874, 1882, 104 L. Ed. 2d 459 (1989). This Court has found, under virtually identical facts, that the DOC has a legitimate compelling government interest in preventing contraband from entering or being kept inside its prison facilities. In *Ware, supra*, this Court established a direct relationship between contraband control and the grooming policy at issue. The DOC established that controlling contraband is essential not only for the safety of the inmates but also for the staff of the prison facilities. *Id.* Accordingly, the Court found that without question, this meets the requirements of a legitimate and compelling government interest, stating, "...the current grooming policy prohibiting dreadlocks is the least restrictive means of ensuring that contraband does not enter the facilities in light of the particular realities of DOC facilities." *Id.* at *26. The DOC also established offender identification and inmate hygiene as compelling government interests making the grooming policy necessary.

The second and forth prongs of the *Turner* test, address whether or not "alternative means" of practicing his religion have been made available to the plaintiff. In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). Plaintiff has not alleged that he has been denied the right to practice his religion

4

at any time.

Factors related to the third prong were considered in *Ware*, in which this Court found that additional time and staffing resources that would have to be dedicated to searching plaintiff and every other inmate wearing dreadlocks every time a search is conducted would consume significant additional time and impose a costly burden. *Id.* at *25. That undue burden increases in severity with every other prisoner who wears dreadlocks. *Id.*

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he also intended to allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a substantial burden on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting

the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. § 2000cc-5(7)(A).* Thus, religious services, religious education, and dietary principles all qualify as "religious exercises.

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70. In *Ware*, the plaintiff, a Rastafarian challenging the DOC's grooming policy of cutting dreadlocks, did so in the context of RLUPA. This Court, dismissing plaintiff's claims after an extensive analysis, found that the DOC successfully and sufficiently proved, by clear and convincing evidence, that the grooming policy is the least restrictive means of furthering the legitimate and compelling government interest in controlling contraband, identifying offenders, promoting offender hygiene, and preventing or at least minimizing prisoner-on-prisoner violence. *Id.* at *36. For the same reasons, this Court finds that Cooley has failed to state a claim under RLUPA.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** for the above reasons, plaintiff's request for prospective injunctive relief should be **DENIED** and claims set forth in his complaint are **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to

file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, April 24, 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE